Barak Lurie (SBN 144887)
Amanda R. Washton (SBN 227541)
**LURIE & SELTZER**
11766 Wilshire Blvd., Suite 600
Los Angeles, California 90025
Telephone: (310) 478-7788
Facsimile:  (310) 347-4442

Attorneys for Creditor
Thomas Misik

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA, SAN FERNANDO VALLEY

| In re: | Case No. 1:15-bk-10446 |
|---|---|
| THOMAS D'ARCO | Adv. No. _____ |
| Debtor. | **COMPLAINT** |

Plaintiff THOMAS MISIK ("Plaintiff"), by and through counsel, files this Complaint Objecting to Discharge of Debt pursuant to 11 U.S.C. § 523(a)(2)(A), 11 U.S.C. § 523(a)(4) and 11 U.S.C. § 523(a)(6). Plaintiff requests entry of a nondischargeable judgment against the Debtor, Thomas R. D' Arco, ("Debtor") for the full amount of any debt (including, but not limited to, principal, interest, costs, and attorneys' fees) the Court determines that Debtor owes to Plaintiff as a debt pursuant to 11 U.S.C. § 101(12) and determined non-dischargeable pursuant to 11 U.S.C. §523.  For his Complaint against the Debtor, Plaintiff alleges as follows:

## COMPLAINT

1. Plaintiff and Martin Ballardo ("Ballardo") had a long-standing friendship of many years prior to May of 2007.

2. In or around May of 2007, Plaintiff informed Ballardo that Plaintiff had just made some money from the sale of one of his properties.

3. Ballardo informed Plaintiff that he owned property located in Apple Valley, California. Ballardo also told Plaintiff that this property secured a loan he had with a bank on which Ballardo was paying 12 percent interest.

4. Ballardo suggested to Plaintiff that perhaps Plaintiff could take over the bank's loan by lending Ballardo the balance at an interest rate of 12 percent.

5. The parties agreed that Plaintiff would replace the bank as the secured lender on the property. Plaintiff agreed to lend $100,000 to Ballardo at an interest rate of 12 percent, and Ballardo told Plaintiff the property would secure the loan.

6. Ballardo did not reveal to Plaintiff that he did not own the property, and that there were in fact senior lienholders who had interests ahead of Plaintiff on the property.

7. Ballardo further instructed Plaintiff to make the payment in the form of a check made payable to Debtor Thomas D' Arco ("Debtor"). Ballardo then instructed Plaintiff to deliver the check to Ballardo's house.

8. As instructed, Plaintiff brought the check in the amount of $100,000 to Ballardo's home, where he received in return a series of documents.

9. The documents Plaintiff received included a promissory note, which obligated an entity, then unknown to Plaintiff, called Sayrahan Group, LLC ("Sayrahan") to pay Plaintiff 12% interest on the loan.

10. Additionally, the documents included a series of post-dated checks (representing interest payments).

11. After Plaintiff cashed the first of the post-dated checks without problem, Ballardo contacted Plaintiff to request another $50,000 loan in which Ballardo promised to "secure" with another Apple Valley property, located at 16953 Tiamo Road.

12. Ballardo again represented to Plaintiff that he owned the property, which in fact was not true.

13. Relying on Ballardo's representations, Plaintiff tendered a second check in the amount of $50,000 and received another series of documents including a note from Sayrahan, six post-dated checks, and a deed of trust for the second property. After receiving approximately $15,000 in payments, Plaintiff did not receive any further payment.

14. Notably, shortly after Plaintiff tendered the first $100,000 check, Debtor deposited the funds into his own personal bank account and transferred $40,000 to Ballardo.

15. Likewise, after receiving the $50,000 check from Plaintiff, Debtor transferred $50,000 to Ballardo.

16. Plaintiff always believed that he was paying the funds to Ballardo; not to Sayrahan, and not to the Debtor.

17. Ultimately, Ballardo received $90,000 of Plaintiff's money.

18. Plaintiff then demanded his money back from both Ballardo and Debtor.

19. After having received no satisfaction, on or about July 22, 2008 Plaintiff filed a Complaint against Ballardo, Debtor, and Sayrahan in the Superior Court of California County of Los Angeles, Northeast District.

20. The matter proceeded to trial on October 13 and 14, 2009.

21. The Court held Ballardo liable for fraud and Sayrahan liable for breach of contract, each in the amount of $150,000. The Court did not determine that Debtor was liable for the counts directed against him personally.

22. After trial, Plaintiff noticed and took the judgment debtor exam of Sayrahan, through its owner, the Debtor.

23. During the judgment debtor examination of Sayrahan, Debtor revealed information that showed he was the alter ego of Sayrahan, and thus that he had engaged in false pretenses in connection with the promissory notes.

24. Debtor revealed that no one ever prepared or kept corporate meeting minutes for Sayrahan.

25. Debtor revealed that Sayrahan's liabilities well-exceeded its assets immediately after Plaintiff delivered money to Sayrahan. In fact, Sayrahan never had a month during which its account's starting or ending balance exceeded $3,266.66, even though it borrowed $150,000 from Plaintiff in 2007.

26. Debtor revealed that Sayrahan's bank records had no money by the end of December 2009.

27. Debtor revealed that Sayrahan never maintained any business address apart from Debtor's own residence.

28. Debtor revealed that Sayrahan never had employees other than Debtor.

29. Debtor revealed that Sayrahan never had any officers other than Debtor.

30. Debtor revealed that Sayrahan never maintained any separate phone number from Debtor.

31. Debtor revealed that Sayrahan never had its own website.

32. Debtor revealed that Debtor alone made all of the binding decisions for Sayrahan, and no one else had the ability to make a decision that could bind Sayrahan.

33. Debtor revealed that Debtor had always had 100% ownership of Sayrahan.

34. Debtor also revealed his alleged willingness to pay Sayrahan's debts, having submitted a personal check to Plaintiff as part of the repayment checks Plaintiff received and also admitted that he "possibly, but rarely" paid Sayrahan's debts with other accounts.

35. On or about May 29, 2012, the Court amended the judgment (following the appeal and motion) and found that Debtor was the alter ego of Sayrahan, and was therefore jointly and severally liable in all respects with Sayrahan under the previously amended judgment entered January 14, 2010.

36. In addition, during the post-judgment discovery process, Misik discovered that D'Arco wrote the promissory note binding Sayrahan, and securing Misik's $100,000 check, after Misik had already provided the $100,000 check to Ballardo.

37. Debtor intended to mislead Plaintiff and actively concealed all of the aforementioned material facts, and that he used Sayrahan as his alter ego, from Misik.

## CLAIMS FOR RELIEF

## 11 U.S.C. § 523(a)(2)(A)

38. Plaintiff realleges and incorporates the previous allegations of the above paragraphs as though fully set forth herein.

39. Upon information and belief, the Debtor obtained his assets, including but not limited to those assets and proceeds that Debtor may or may not have identified as assets of his bankruptcy estate, through false pretenses.

40. Debtor, through his alter ego entity (Sayrahan), made a pretense to Plaintiff that Debtor would be able to satisfy Plaintiff's earlier loans, totaling $150,000, in addition to providing Plaintiff with interest as evidenced by the promissory notes.

41. Debtor knew that this pretense to Plaintiff was false at the time it was made.

42. Debtor made this pretense to Plaintiff with the intent to mislead Plaintiff into understanding the transaction and the viability of collection. In fact, as the state court has already determined, Sayrahan was a mere sham and front (i.e. alter ego) of Debtor.

43. Plaintiff justifiably relied on Debtor's pretense, and as a result Plaintiff incurred damages.

44. Based upon amendments to the underlying judgment, accrued interest and attorneys' fees (as provided for under the promissory notes), Plaintiff is now entitled to recovery of an amount not less than $421,544.81.

## 11 U.S.C. § 523(a)(4)

45. Plaintiff realleges and incorporates the previous allegations of the above paragraphs as though fully set forth herein.

46. Upon information and belief, the Debtor obtained his assets, including but not limited to those assets and proceeds that Debtor may or may not have "identified as assets of his bankruptcy estate, by committing larceny.

47. Debtor took possession of Plaintiffs property in an amount totaling $150,000.

48. Debtor took possession of Plaintiffs property, without Plaintiffs consent, intending to permanently deprive Plaintiff from ever again receiving the property.

49. Debtor has maintained possession of Plaintiffs property, and as a result Plaintiff has suffered damages.

50. Based upon amendments to the underlying judgment, accrued interest and attorneys' fees (as provided for under the promissory notes), Plaintiff is now entitled to recovery of an amount not less than $421,544.81.

## 11 U.S.C.§ 523(a)(6)

51. Plaintiff realleges and incorporates the previous allegations of the above paragraphs as though fully set forth herein.

52. Upon information and belief, the Debtor obtained his assets, including but not limited to those assets and proceeds that Debtor may or may not have identified as assets of his bankruptcy estate, through willful and malicious injury against Plaintiff.

53. Plaintiff was entitled to the sum of $150,000 prior to the time Plaintiff delivered this amount of money to Debtor's alter ego entity, Sayrahan.

54. After receiving Plaintiffs $150,000, Debtor, through his alter ego entity (Sayrahan), improperly disposed of a portion of Plaintiffs money to Ballardo, and retained the remainder for himself.

55. Plaintiff incurred damages as a result of the foregoing willful and malicious conversion, and holds a non-dischargeable debt against the Debtor in an amount Plaintiff will prove at trial.

56. Based upon amendments to the underlying judgment, accrued interest and attorneys' fees, Plaintiff is now entitled to recovery of an amount not less than $421,544.81.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against the Debtor as follows:

    1.    For a determination that Debtor incurred debt to the Plaintiff as a result of false pretenses, so that Debtor may not seek discharge of this debt pursuant to 11 U.S.C. § 523(a)(2)(A).

    2.    For a determination that Debtor has committed larceny by permanently depriving Plaintiff of his property, so that Debtor may not seek discharge of this debt pursuant to 11 U.S.C. § 523(a)(4).

    3.    For a determination that Debtor incurred debt to the Plaintiff as a result of willful and malicious injury, so that Debtor may not seek discharge of this debt pursuant to 11 U.S.C. § 523(a)(6);

    4.    For judgment for such non-dischargeable debt in the full amount of Plaintiff's damages (including principal, accrued and accruing interest, costs, and attorneys' fees) to be proven at trial but not less than $421,544.81. For such other and further relief as the Court deems just and proper under the facts and circumstances of this case.

DATED: May 1, 2015                             LURIE & SELTZER

                                                     */s/ Amanda R. Washton*
                                                     Amanda R. Washton, Esq.
                                                     Attorneys for Creditor
                                                     Thomas Misik